IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **APRIL BROWN,** | : | Civil No. 1:19-CV-00116-SHR |
| **Plaintiff,** | : | |
| v. | : | |
| **PRIORITY HEALTH CARE GROUP, LLC, AND PREMIER AT SUSQUEHANNA FOR NURSING AND REHABILITATION, P.C.,** | : | |
| **Defendant.** | : | Judge Sylvia H. Rambo |

## **M E M O R A N D U M**

Before the court is the motion to dismiss (Doc. 12) filed by Defendants Priority Healthcare Group, LLC ("Priority") and Premier at Susquehanna for Nursing and Rehabilitation, P.C. ("Premier"; collectively, "Defendants").[1] Upon consideration of Plaintiff April Brown's ("Plaintiff" or "Ms. Brown") complaint (Doc. 1), the motion to dismiss, Plaintiff's opposition (Doc. 13), and Defendants' reply (Doc. 15), the court will grant the motion without prejudice.

### **I. Background**

According to her complaint, Ms. Brown is a Licensed Practitioner Nurse ("LPN") who needs intermittent leave from work to deal with episodes of her chronic

---

[1] The court recognizes Defendants are distinct entities who may have differing levels of liability from one another. For the purpose of resolving the instant motion, however, the court refers to them together for simplicity.

1

anxiety and depression. Around June of 2017, Defendants hired Plaintiff to work as an LPN, at which time she advised Defendants of her ailments and need for occasional leave. After working for approximately ten months, Defendants suspended Plaintiff from work due to her calling out of work too frequently. One month later, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") from Defendants' human resources department. Defendants granted her request. Around that time, Ms. Brown's coworkers began antagonizing her for taking FMLA leave by: mocking and diminishing her condition; informing her she was "fuck[ing] the nurses over" by taking time off; insulting her on Facebook; and accusing her of lying about her condition. (Doc. 1 ¶ 18.) In response, Plaintiff complained to her supervisors about her coworkers' behavior, but she was told to handle the issues on her own. Plaintiff has not alleged any further insults followed her complaints.

Around August 30, 2018, Defendants suspended Plaintiff for three days due to her violating company policy by calling out and requesting FMLA leave less than three hours before her shifts. Plaintiff alleges her condition caused emergent symptoms too suddenly for her to provide such advanced notice, but she does not allege that Defendants knew of this aspect of her ailments.

Approximately three months later, around November 23, 2018, Plaintiff's supervisors requested a meeting where they informed her that narcotics were missing

2

from the facility. She was told she needed to take a drug test and submit a written report on how she counted narcotics. Ms. Brown indicated she would do so but wanted to first consult an attorney. Defendants informed her she would need to take the drug test immediately. Plaintiff declined and resigned the same day.

On January 18, 2019, Plaintiff sued Defendants under the FMLA for interference and retaliation, claiming Defendants constructively discharged her for asserting her FMLA rights. On April 8, 2019, Defendants filed a motion to dismiss under Rule 12(b)(6), arguing: (1) by granting Plaintiff's requested FMLA leave, Defendants did not interfere with her FMLA rights; (2) her suspension for violating a company call-out policy, and her negative treatment for refusing an immediate drug test, did not interfere with her rights nor were they done in retaliation; (3) the three-month gap between Plaintiff last requesting FMLA leave and her supposedly being constructively discharged is too large for the court to infer any relationship between the two; and (4) Plaintiff cannot have been constructively discharged by the administration of a drug test, because, as a matter of law, it is not an intolerable work condition. (*See generally*, Doc. 12.)

On April 26, 2019, Plaintiff responded by arguing: (1) she was withdrawing her interference claim; (2) temporal proximity is not necessary where Plaintiff alleges a pattern of antagonistic treatment; (3) Plaintiff's coworkers harassing her, culminating in her forced drug test, constituted a pattern of antagonistic treatment;

3

(4) Defendants knew her illness rendered her unable to comply with the three-hour call-out policy, yet they punished her anyway; and (5) a reasonable person would have resigned under her circumstances. (*See generally*, Doc. 13.)

On May 2, 2019, Defendants replied arguing: (1) antagonistic comments by Plaintiff's coworkers cannot constitute adverse employment because her coworkers lacked authority over her and did not threaten to discharge her; (2) Plaintiff quit because of her drug test, not her coworkers' treatment, so the lack of temporal proximity proves Plaintiff failed to allege causation; (3) Plaintiff failed to adequately address Defendants' case law stating punishment for violations of company policy cannot constitute adverse employment treatment. (*See generally*, Doc. 15.)

Having been fully briefed, this issue is now ripe before the court.

## II. <u>Standard of review</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, --- F. App'x ----, 2019 WL 4187372, at *3 (3d Cir. Sept. 4, 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d

95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Discussion

This court has previously laid out the elements of an FMLA retaliation claim as follows:

> FMLA regulations prohibit an employer from retaliating against an employee for having exercised or attempted to exercise FMLA rights. To succeed on a FMLA retaliation claim, a plaintiff must show that (1) she invoked her right

5

> to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights.

*Kegerise v. Susquehanna Twp. Sch. Dist.*, 325 F. Supp. 3d 564, 583 (M.D. Pa. 2018) (internal citations and quotations omitted). Third Circuit "case law has focused on two main factors in finding the causal link necessary for retaliation: timing and evidence of ongoing antagonism." *Abramson v. William Paterson College of N.J*, 260 F.3d 265, 288 (3d Cir. 2001). "The mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). Instead, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse*, 126 F.3d at 503 (quoting *Robinson*, 120 F.3d at 1302).

Here, Plaintiff's allegations can be divided into three possible retaliation scenarios, each of which fails. First, Plaintiff has failed to allege facts from which the court could infer Defendants' enforcement of its three-hour call-in policy was motivated in part by animus. In-and-of itself, Defendants' requirement that employees request time off more than three hours in advance is not a violation of one's FMLA rights. *See Raimondi v. Wyoming Cty.*, No. 3:14-cv-1918, 2016 WL

2989067, at *11 n.9 (M.D. Pa. May 24, 2016) ("[A]n employer's decision to suspend an employee for violating the employer's call-in policy while on FMLA leave did not abrogate the employee's FMLA rights.") (citing *Callison v. City of Phila.*, 430 F.3d 117, 121 (3d Cir. 2005)). Thus, Plaintiff must allege additional facts to support an inference that Defendants' enforcement of the three-hour rule was done specifically in retaliation to her requesting FMLA leave.

Plaintiff claims she has alleged two supporting facts: (1) that she was suspended specifically in response to requesting FMLA leave; and (2) her employer knew her ailment—the basis for her requesting FMLA leave—precluded her from complying with the policy. This first argument fails because the "denial of a requested accommodation does not by itself constitute retaliation for the request—such reasoning would result in a claim for unlawful retaliation every time a request for accommodation, reasonable or not, is denied." *Feliciano v. Coca-Cola Refreshments USA, Inc.*, 281 F. Supp. 3d 585, 593 (E.D. Pa. 2017). This is particularly true here because Plaintiff implicitly pleads that she did fail to comply with the policy. The second argument fails because it is conclusory. Plaintiff does not allege how her depression and anxiety rendered her incapable of calling in three hours in advance of her shifts to request time off, much less how Defendants could have known this. While the court acknowledges such a scenario is possible, Plaintiff has failed to supply sufficient facts from which the court can reason whether it is

7

plausible here. *In re Trokie*, 590 B.R. 663, 669 (Bankr. M.D. Pa. 2018) ("[F]or a complaint to withstand a motion to dismiss, a claim must be more than possible, it must be plausible.").

Second, Plaintiff has failed to allege how being forced to submit to a drug test constituted an act of retaliation. Plaintiff suggests, in her briefing, that this drug test was a pretextual basis for harassing her. But Plaintiff has not pleaded as much, so the court will disregard this theory. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint."). Here, Plaintiff has alleged that the drug test was offered in connection with an investigation into certain missing narcotics. Without explaining how or why the drug test was related to her FMLA leave, the court cannot reasonably infer the drug test was being offered for any reason other than to carry out the investigation. Further, it is reasonable and commonplace for an employer to request a drug test be carried out immediately; delay could result in the person's body metabolizing any present drugs or enable the person to somehow otherwise obstruct the test. Moreover, Plaintiff has alleged a roughly three-month gap between her last FMLA request and the drug test—an implausible gap in time weighing against the suggestion that the test was administered in retaliation. Considering the facts as alleged, the court cannot

8

reasonably infer the drug test was administered as retaliation for Plaintiff requesting FMLA leave.

Third, Plaintiff's allegation that her coworkers were harassing her is insufficient to hold Defendants liable for an FMLA violation. The court will assume that her coworkers' treatment of her constituted a pattern of antagonism. *Hofferica v. St. Mary Med. Ctr.*, 817 F. Supp. 2d 569, 585 (E.D. Pa. 2011) ("[A] causal link between protected activity and adverse action may be inferred from 'an intervening pattern of antagonism following the protected conduct.'") (quoting *Peace-Wickham v. Walls*, 409 F. App'x 512, 522 (3d Cir. 2010)). But Plaintiff did not sue her coworkers. She sued her employer. She thus must allege sufficient facts to support vicarious liability. *Walls*, 409 F. App'x at 522 ("Although creating or permitting a hostile work environment can constitute a materially adverse employment action, vicarious liability remains necessary to establish this basis.").

To do so, Plaintiff must allege her employer was negligent or reckless in failing to adequately address the hostility. *See id.* at 519. Here, Plaintiff has alleged she suffered harassment, reported it to her employer, and that her employer did not adequately address the problem because they simply instructed her to handle it. But Plaintiff's allegation that her employer's response was unhelpful is pleaded in a conclusory fashion. She does not explain why her employer advising her to handle it on her own was insufficient to address the problem. This is particularly true given

9

Plaintiff has not pleaded any harassment persisted after she sought help. As such, she has failed to allege sufficient facts to state a claim for vicarious liability. *See id.* at 523 (failure to show employer "acted in an intentionally ineffective or negligently indifferent manner" meant plaintiff failed to show vicarious liability sufficient to prove a continuously antagonistic work environment).

Thus, because Plaintiff has failed to allege sufficient facts from which the court can infer Defendants retaliated against her for requesting FMLA leave, Plaintiff's retaliation claim fails as a matter of law.

Finally, even if the court assumed one of these actions was done in retaliation, Plaintiff has not adequately pleaded it precipitated her decision to resign. "Constructive discharge will be found where 'the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Lanza v. Postmaster Gen. of U.S.*, 570 F. App'x 236, 240 (3d Cir. 2014) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). "The harassment inflicted upon the worker must be severe and pervasive, even more so than that required to prove a hostile work environment." *Id.* at 240. "[H]arassment is pervasive when incidents of harassment occur either in concert or with regularity." *Patrick v. Werner Enters.*, 744 F. App'x 765, 768 n.3 (3d Cir. 2018) (internal quotations omitted).

Constructive discharge tends to be a "fact-intensive question," rendering it "inappropriate for the District Court to decide" on "a 12(b)(6) motion." *See Hill v. Borough of Kutztown*, 455 F.3d 225, 232 n.7 (3d Cir. 2006). Plaintiff's problem here, however, is not so much that the court is rejecting a well-pleaded claim that her situation was sufficiently hostile to compel a reasonable person to resign; it is that she has failed to plead any connection between an act of retaliation and her decision to resign. The closest she has come to pleading an act of retaliation comes with the antagonism she suffered from her coworkers. Assuming this was enough to prove vicarious liability, she has not alleged—other than in a conclusory fashion—that this harassment was pervasive and motivated her to quit. In fact, she has not pleaded she suffered any harassment for four months before she resigned. It is difficult for the court to conceive of a reasonable person finding a bevy of personal attacks so offensive they decide to quit, but not until four months free of further insults. Having failed to allege a causal connection between her allegedly hostile work environment and her resigning, Plaintiff's retaliation claim fails. *See Santiago v. St. Mary Med. Ctr.*, No. 1:15-cv-2212, 2015 WL 6758163, at *7 (E.D. Pa. Nov. 5, 2015) (dismissing retaliation claim on 12(b)(6) because Plaintiff was unable to "plead a casual nexus between [defendants' conduct] and" her "termination").

Nonetheless, additional factual content could potentially remedy some of these errors, so the court will grant Plaintiff leave to replead. *See Shane v. Fauver*, 213 F.3d 113, 115-16 (3d Cir. 2000).

## IV. <u>Conclusion</u>

For the reasons outlined above, the court will grant the motion without prejudice, permitting Plaintiff leave to replead in an attempt to remedy the errors identified in this opinion. An appropriate order will follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: October 1, 2019